# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Marcus Harris, Julius Caldwell, Demarkus Hobbs, and Dana Evenson, on behalf of themselves and all others similarly situated, | Case No. 13-cv-1719 (SRN/SER) |
| Plaintiffs, | |
| v. | |
| Chipotle Mexican Grill, Inc., | |
| Defendant. | |
| DeShandre Woodards, on behalf of himself and all others similarly situated, | Case No. 14-cv-04181 (SRN/SER) |
| Plaintiff, | |
| v. | |
| Chipotle Mexican Grill, Inc., | |
| Defendant. | |

## JOINT MOTION TO APPROVE SETTLEMENT

## AND TO DISMISS ACTION WITH PREJUDICE

Plaintiffs Marcus Harris, Julius Caldwell, Demarkus Hobbs and Dana Evenson, on behalf of themselves and all other members of the certified collective in this proceeding, and DeShandre Woodards (collectively referred to as "Plaintiffs") by and through their undersigned counsel, Williams Law Firm, Bachus & Schanker, LLC, Law Office of Adam S. Levy, LLC, Hinkle Shanor, LLP, and Kirby McInerny, LLP, and Defendant Chipotle Mexican Grill, Inc. ("Chipotle"), by and through its attorneys, Messner Reeves LLP, Robins Kaplan LLP, and Sheppard Mullin Richter & Hampton, LLP, hereby submit this Joint Motion to Approve Settlement and to Dismiss Action With Prejudice ("Joint Motion"). A copy of the Settlement Agreement and General Release is attached hereto as Exhibit 1 (the "Settlement Agreement"), and a proposed order dismissing this action with prejudice is filed together with this Motion

.**INTRODUCTION**

This litigation involves allegations that Plaintiffs worked "off the clock" and were not fully compensated for their work with Chipotle. Specifically, Plaintiffs alleged that Chipotle committed violations of the Fair Labor Standards Act ("FLSA") and various state laws, including claims for unpaid minimum wage, unpaid overtime, unpaid off the clock work, failure to keep adequate records, retaliation, and failure to pay for time spent at or on various work activities including meetings, training and cleaning.

This litigation started as several other cases which were consolidated and/or coordinated together. Specifically, this litigation was originally three separate cases: (1) DeMarkus Hobbs and Dana Evenson, on behalf of themselves and others allegedly "similarly situated" filed suit seeking damages against Chipotle under the Fair Labor

Standards Act in the case styled *DeMarkus Hobbs, et al., v. Chipotle Mexican Grill, Inc.*, civil action number 1:13-cv-01719-RBJ in the United States District Court for the District of Colorado (the "Hobbs Matter"); and (2) DeShandre Woodards filed suit individually and on behalf of others allegedly "similarly situated" seeking damages against Chipotle under the Fair Labor Standards Act ("FLSA") and Minnesota Law in the case styled *DeShandre Woodards v. Chipotle Mexican Grill, Inc.*, United States District Court for the District of Minnesota, No. 14-cv-4181 –SRN-SER.  Ultimately, the Hobbs Matter was transferred and consolidated with this case on October 4, 2014.  The Woodards case began as a purported collective action, but later was amended to remove the allegations of a collective action and proceeded in Mr. Woodards' individual capacity only.  The *Woodards* and *Harris* cases were consolidated for pre-trial and discovery purposes, and were jointly settled.

Following the consolidation of each of these cases, the Plaintiffs in this matter pursued a purported collective action that sought to encompass all Chipotle employees in the United States who allegedly worked off the clock after October 23, 2010.  Chipotle opposed any collective.  The Magistrate Judge issued a Report and Recommendation that the request for a collective for all employees who worked off the clock in the United States from October 23, 2010 to October 23, 2013, be granted. After Chipotle objected to this Report and Recommendation, the District Judge conditionally certified a collective of employees who allegedly worked off the clock on closing shifts or were not otherwise paid for various work activities on closing shifts at Chipotle's Crystal, Minnesota location.  Ultimately, after the notice period, 30 individuals, including the Named

Plaintiffs, opted in to the *Harris* collective. Three individuals later were dismissed from the collective with prejudice for failing to comply with Chipotle's written discovery requests.

During the period in which this case was litigated, the parties engaged in written discovery, produced and reviewed documents (including the wage and hour records of every member of the collective), took depositions of members of the collective and of Chipotle employees, and litigated several motions (including motions for conditional certification and for decertification of the collective).

On or about July 7, 2017, the parties notified the Court that they had reached a tentative settlement, which has since been finalized. Pursuant to the Settlement Agreement, Chipotle will pay Plaintiffs a total of $62,000 to resolve all claims at issue in their respective cases, with the Court to determine whether any award of reasonable attorneys' fees and costs is appropriate for the Named Plaintiffs. To be clear, Chipotle objects to any request for attorney's fees or costs and does not believe Plaintiffs are entitled to any such recoveries. The $62,000 figure represents more than two times the damages figures calculated and provided by Plaintiffs and their counsel to Chipotle, as well as additional sums for the release of claims made by eight members of the *Harris* collective in other litigation. Those damages estimates were derived by Plaintiffs from payroll and other information provided by Chipotle during discovery.

The Settlement Agreement was reached after negotiations between counsel, including mediation before Magistrate Judge Steven Rau. Each member of the collective has been informed of the terms and the amount he or she will receive, and none has

indicated any opposition. Accordingly, and for the reasons stated more fully below, Plaintiffs and Chipotle jointly request that the Court enter an order (1) approving the Settlement Agreement; and (2) dismissing this case with prejudice.

## ARGUMENT

The Court should approve the Settlement Agreement and dismiss the action with prejudice because the settlement is the product of contested litigation, all parties are represented by legal counsel, the Settlement Agreement reflects a reasonable compromise over disputed issues, and the Settlement Agreement's provisions are fair and reasonable.

At the conclusion of an FLSA claim, the claims may be compromised upon court review and approval of a settlement. *See McInnis v. Ecolab Inc.*, 2012 WL 892187 at *1-2 (D. Minn. Feb. 17, 2012) citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir. 1982); *see also Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925 n.8, 90 L.Ed. 1114. In approving FLSA settlements, courts in the Eighth Circuit typically consider two primary factors: (1) the existence of a bona fide dispute; and (2) whether or not the settlement is fair and reasonable. *See Fry v. Accent Mktg. Servs., L.L.C.*, No. 4:13 CV 59, 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014) citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).

There is a strong presumption in favor of finding a settlement to be fair. *See Grahovic v. Ben's Richardson Pizza Inc.*, 2016 WL 1170977 (E.D. Mo. Mar. 25, 2015) quoting *Crabtree v. Volkert, Inc.,* No. 11-0529-WS-B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). In addition, the fact that a settlement is the negotiated result of an

adversarial proceeding is an indication of its fairness. *See Netzel v. West Shore Group, Inc.,* 2017 WL 1906955 *6 (D. Minn. May 8, 2017) ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.") *quoting Bonetti v. Embarq Mgmt. Co.,* 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009).

A.  **This Settlement Agreement Arises from a *Bona Fide* Dispute Between Plaintiffs and Chipotle**

It is clear that this case involves actual issues in dispute. The underlying allegation in the litigation is that Chipotle required employees to perform work for Chipotle without being clocked in to Chipotle's electronic timekeeping system or after being clocked out and, as a result, they were never paid for such time. In support of their allegations, Plaintiffs and their counsel provided declarations; answered interrogatories, document requests and requests for admissions; provided deposition testimony; took deposition testimony of Chipotle employees; and cited documents produced by Chipotle and other parties (e.g. the Minnesota Department of Labor) evidencing this alleged off-the-clock work. In consultation with a retained expert, Plaintiffs and their counsel carefully evaluated the wage and hour records produced by Chipotle, and contend that they calculated alleged damages for each Plaintiff based on gaps between the time the Plaintiff was clocked out and the time the store's security alarm was set each evening. Plaintiffs and their counsel further contend that in the face of Chipotle's opposition to any collective whatsoever in this case, Plaintiffs and their counsel moved for, obtained, and aggressively defended the collective in this case, which Plaintiffs contend included

successfully opposing Chipotle's motion to decertify the collective. Plaintiffs and their counsel were actively preparing for trial, and fully intended to prove their claims to a jury, at the time the parties reached the proposed settlement.

Throughout the litigation, Chipotle has strenuously disputed the Plaintiffs' allegations, calculations, and methodology for calculating their alleged damages. Chipotle also adamantly denies that Plaintiffs were entitled to any damages. Chipotle believes, for instance, that even if the Plaintiffs were able to prove that they worked off the clock (which Chipotle disputes), it has several defenses that could potentially bar recovery for some, if not all, of the claims. Chipotle further contends that it did not know, nor should it have known through the exercise of reasonable diligence, that the Plaintiffs worked off the clock and without pay. Moreover, Chipotle asserts that some or all of the alleged off-the-clock work was *de minimis,* non-compensable, and/or did not result in a failure to pay overtime or minimum wages.  In addition, Chipotle believes some of the alleged work was preliminarily or postliminarily and thus noncompensable. Furthermore, Chipotle contends that it successfully challenged the purported, nationwide collective which resulted in a much narrowed collective limited to one location in Minnesota with only 30 opt-in plaintiffs.  Ultimately, Chipotle was successful in dismissing three of the opt-in plaintiffs from the case with prejudice.  Chipotle also successfully prevented Plaintiffs' second attempt to amend the complaint to allege numerous additional claims.  Chipotle  contends that Plaintiffs also abandoned their allegations of a Rule 23 class action.  Finally, Chipotle was prepared to take this case to trial and strongly believes that it would have prevailed at trial.  As a result, there is a

*bona fide* dispute as to Plaintiffs' ability to recover any alleged unpaid wages, let alone liquidated damages or attorneys' fees. Specifically, Chipotle further contends that any failure to compensate for that time was reasonable and in good faith and was not willful.

**B.     The Settlement Agreement Represents a Fair and Reasonable Resolution of the Dispute**

In determining whether the Settlement Agreement is fair and equitable, this Court must consider a number of factors including: (1) at what stage of the litigation the settlement was reached, and the complexity, expense, and likely duration of the remaining litigation; (2) how the settlement was negotiated, *i.e.,* whether there are any indicia of collusion; (3) opinions about the settlement by counsel and the parties; and (4) whether the present value of the settlement outweighs the potential recovery after continued litigation. *Sanderson v. Unilever Supply Chain, Inc.,* No. 4:10–CV–0775–FJG, 2011 WL 5822413, at *2 (W.D.Mo. Nov.16, 2011). The Settlement Agreement executed in this case, which would pay Plaintiffs more than twice their calculated damages, is fair and reasonable in light of these factors.

**1.  The Stage of the Proceedings and the Complexity of Additional Litigation Weigh in Favor of Finding the Settlement Agreement Fair and Reasonable.**

Where the parties engaged in significant discovery, a settlement will be deemed fair without the need for further evidence. *See Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148 (8th Cir. 1999). In this case, the parties litigated this case for four years and the proceedings advanced nearly to the eve of trial, a stage more than sufficient to permit the parties and their counsel to obtain and review evidence, to evaluate their claims and

defenses, and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult, risky and costly undertaking to proceed to the trial of this case. The parties exchanged interrogatories, document requests, and requests for admission; took and defended depositions; engaged in motion practice on a variety of issues; and actively prepared for a trial that was scheduled for July 31, 2017. In light of the discovery conducted and other activities, the parties thoroughly assessed the legal and factual merits of the alleged claims of Mr. Woodards and the members of the collective, which enabled them to engage in meaningful and informed settlement discussions

Continuing with the litigation would have entailed additional time and expense but—at least based on Plaintiffs' damages calculations—could not have resulted in additional recovery for the Plaintiffs themselves. Moreover, proceeding to trial would have consumed valuable resources of this Court. Throughout this litigation, for instance, Chipotle has taken the position that the very nature of the claims asserted in this case requires a factually intensive inquiry at trial. The nature of "off-the-clock" work claims, in Chipotle's view, requires highly individualized inquiries to determine not only if such work did, in fact, occur off the clock, but also to determine the amount of work and whether or not such work was compensable under the FLSA standards. Furthermore, as noted above, Chipotle maintains that the specific claims would have required proof that Chipotle knew or should have known that such work was being performed off the clock and without pay and that it has additional defenses both to liability and to liquidated damages.

Given that there were 27 claimants remaining in litigation (including the Named Plaintiffs), the *Harris* matter would have taken substantial time to resolve at trial. Furthermore, there would have been additional trial preparation, extensive motion practice, and likely appeals regardless of the outcome. *See Stainbrook v. Minnesota Department of Public Safety,* 2017 WL 916454 *1 (D. Minn. Mar. 8, 2017) (approving settlement of an FLSA collective action with 44 opt-ins which the court described as requiring "extensive discovery"). Thus, given that any recovery by Plaintiffs would be delayed and costs would increase, this factor weighs strongly in favor of finding the Settlement Agreement to be fair and reasonable.

### 2.  There is No Suggestion of Fraud or Collusion in the Settlement

In cases where all parties are represented by counsel during the litigation and during the settlement discussion, as was the case here, courts have almost universally found that the settlement was the product of arm's length negotiations. *See, e.g., Grahovic,* 2016 WL 1170977, at *2. ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable."); *Bonetti v Embarq Mgmt. Co.,* 715 F. Sup 2d 1222, 1227 (M.D. Fla. 2009); *Netzel v. West Shore Group, Inc.,* 2017 WL 1906955 *6 (D. Minn. May 8, 2017). As the Court is aware, this case was vigorously contested by both parties, and therefore this factor also weighs in favor of finding the Settlement Agreement to be fair and reasonable.

3. **Counsel for Both Parties Believe the Settlement Agreement is Fair and Reasonable.**

In this case, given the risks and cost involved in going to trial, it is the informed opinion of counsel for both parties that the Settlement Agreement is fair and reasonable. While the Court should not blindly follow the opinion of counsel as to the reasonableness of the Settlement Agreement, when counsel for both parties endorse the settlement this weighs heavily in favor of approval. *See FTC v. Mylan Labs, Inc.*, 205 F.R.D. 369, 275-76 (D.C.C. 2002).

4. **Because the Present Value of the Settlement Exceeds What Plaintiffs' Counsel Believes Their Potential Recovery Could Have Been at Trial, There is No Question the Settlement Agreement is Fair and Reasonable.**

A settlement is deemed fair when "[t]he amounts provided for each plaintiff surpass or are close to the alleged damages." *See King v. Raineri Const.*, LLC, 2015 WL 631253 *3 (E.D. Mo. Feb. 12, 2015). Through their counsel, the Plaintiffs provided Chipotle with calculations of the amount of time they allegedly worked off the clock on closing shifts at the Crystal store and the Golden Valley location where DeShandre Woodards worked, and the value of such time based on their respective hourly wage rates. Because each Plaintiff worked different numbers of hours each week, and at different wage rates, the value of each claim varies significantly. Accordingly, as noted above, the damages calculations by Plaintiffs' counsel were fact-intensive and required close scrutiny of each Plaintiffs' wage and hour records. While the Plaintiffs and their counsel believe that their damages calculations are well-founded, it is possible that a reasonable jury would not have accepted these calculations or would have awarded less

or nothing at all (Chipotle also denies the methodology Plaintiffs employed to arrive at these damage calculations and denies that Plaintiffs are entitled to any damages). Moreover, it is possible that the Court would not have awarded any liquidated damages, much less awarded the maximum.

The $62,000.00 being paid in settlement also includes separately-negotiated sums for eight (8) Harris collective members who allege off-the-clock work on day shifts and related claims against Chipotle in a collective in the District of Colorado, *Turner v. Chipotle Mexican Grill, Inc.*, Case No. 14-cv-2612 (JLK). Plaintiffs' counsel used information contained in shift records, deposition testimony, and other documents, as well as information from each of the affected collective members themselves, to calculate alleged damages from off-the-clock work on day shifts and related claims. Then, considering factors like differences in proof, statutes of limitation, the uncertainty of further litigation, and other issues, additional compensation for off-the-clock work on day shifts for each of these employees was negotiated.

The Parties agree that the Settlement Agreement recognizes a maximum value of this case with no discount whatsoever for the risk of losing all or part of any of the claims that were at issue in the litigation, or even for the delay in taking the case to trial and undergoing any appeals. The proposed settlement pays members of the collective more than double the total amount they calculated as damages based on their wage and hour records. As such, the total amount to be paid to each member of the collective is more than a fair recovery for the time they allegedly worked off the clock.

## CONCLUSION

Based on the foregoing, the Plaintiffs and Chipotle respectfully request the Court approve the Settlement Agreement and dismiss Plaintiffs' claims with prejudice.

**WILLIAMS LAW FIRM**

*s/ Kent M. Williams*
Kent M. Williams (No. 0222884)
1632 Homestead Trail
Long Lake, MN 55356
615-940-4452
williamslawmn@gmail.com

**BACHUS & SCHANKER, LLC**
Andrew C. Quisenberry, *pro hac vice*
1899 Wynkoop Street, STE 700
Denver, CO 80202
303.893.9800
Andrew.quisenberry@coloradolaw.com

**LAW OFFICE OF ADAM S. LEVY, LLC**
Adam S. Levy, *pro hac vice*
P.O. Box 88
Oreland, PA 19074
267.994.6952
adamslevy@comcast.net

**HINKLE SHANOR LLP**
Thomas M. Hnasko, *pro hac vice*
Michael E. Jacobs (MN No. 0309552)
P.O. Box 2068
Santa Fe, NM 87504
505.982.4554

thnasko@hinklelawfirm.com
mjacobs@hinklelawfirm.com
**ATTORNEYS FOR PLAINTIFFS**

**MESSNER REEVES LLP**

*/s/ John K. Shunk*
John K. Shunk (*pro hac vice*)
1430 Wynkoop Street, Suite 300
Denver, CO 80202
Telephone:  (303) 623-1800
Fax:  (303) 623-0552
jshunk@messner.com

ROBINS KAPLAN LLP
Jennifer M. Robbins (#387745)
Jeffrey S. Gleason (#396190)
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Fax: (612) 339-4181
jrobbins@robinskaplan.com
jgleason@robinskaplan.com

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Richard J. Simmons (*pro hac vice*)
333 South Hope Street
Forty-Third Floor
Los Angeles, CA 90071
Telephone:  (213) 620-1780
rsimmons@sheppardmullin.com

**ATTORNEYS FOR DEFENDANT**
**CHIPOTLE MEXICAN GRILL, INC.**